O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNE DUMBLE, | ) Case No. EDCV 11-266-OP |
| Plaintiff, | ) |
| v. | ) MEMORANDUM OPINION; ORDER |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| Defendant. | ) |

The Court[1] now rules as follows with respect to the disputed issues listed in the Joint Stipulation ("JS").[2]

/ / /

/ / /

/ / /

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (ECF Nos. 7, 9.)

[2] As the Court stated in its Case Management Order, the decision in this case is made on the basis of the pleadings, the Administrative Record, and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

# I.

## DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues raised by Plaintiff as the grounds for reversal and/or remand are as follows:

(1)     Whether the administrative law judge ("ALJ") properly considered the consultative examiner's findings;

(2)     Whether the ALJ properly considered Plaintiff's residual functional capacity ("RFC");

(3)     Whether the ALJ posed a complete hypothetical to the vocational expert ("VE"); and

(4)     Whether there is an inconsistency between the Dictionary of Occupational Titles ("DOT") and the ALJ's determination that Plaintiff can perform the jobs of cleaner, industrial ("cleaner"); fast-foods worker; and hand packager.[3]

(JS at 2-3.)

# II.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v.

---

[3]  In discussing Plaintiff's ability to do other work, the VE did not use the job names listed in the DOT.  For example, the VE referred to the job listed in DOT 381.687-108 as "housecleaner," not cleaner. (Administrative Record ("AR") at 40.)  Similarly, the VE referred to the job listed in DOT 311.472-010 as "food preparation worker," not fast-foods worker. (Id.)  The ALJ used the same incorrect names in his decision, (id. at 16), and the parties use the same incorrect names throughout the Joint Stipulation.  The Court uses the DOT numbers provided by the VE in his testimony and refers to the jobs by the names listed in the DOT.

1  Sullivan, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence means "more

2  than a mere scintilla" but less than a preponderance.  Richardson v. Perales, 402

3  U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of

4  Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988).  Substantial

5  evidence is "such relevant evidence as a reasonable mind might accept as adequate

6  to support a conclusion."  Richardson, 402 U.S. at 401 (citation omitted).  The

7  Court must review the record as a whole and consider adverse as well as

8  supporting evidence.  Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986).

9  Where evidence is susceptible of more than one rational interpretation, the

10  Commissioner's decision must be upheld.  Gallant v. Heckler, 753 F.2d 1450,

11  1452 (9th Cir. 1984).

12                                         **III.**

13                                   **DISCUSSION**

14  **A.      The ALJ's Findings.**

15          The ALJ found that Plaintiff has the medically determinable severe

16  impairment of epilepsy.  (AR at 11.)  The ALJ also found that Plaintiff has the

17  RFC to perform the full range of medium work with additional limitations:  able to

18  lift and/or carry fifty pounds occasionally and twenty pounds frequently; stand

19  and/or walk for six hours and sit for six hours in an eight-hour workday;

20  occasionally climb, bend, stoop, crawl, kneel, squat, and balance; avoid heights,

21  ladders, scaffolds, moving machinery, operating vehicles, and open bodies of

22  water; should not be responsible for the safety of others; and can perform simple,

23  repetitive, non-public tasks.  (Id. at 13.)

24          Given Plaintiff's age, education, work experience, and RFC, the VE

25  determined that Plaintiff could perform the following jobs:  (1) cleaner (DOT

26  381.687-018); (2) fast-foods worker (DOT 311.472-010); and (3) hand packager

27  (DOT 920.587-018).  (Id. at 40.)  In support of the finding of non-disability, the

28  ALJ adopted the VE's findings and determined that Plaintiff could perform these

1   jobs, all existing in significant numbers in the national economy.  (Id. at 16.)

2   **B.**     **The ALJ's Consideration of the Consultative Examiner's Opinion and**

3             **Plaintiff's Residual Functional Capacity.**

4           On May 14, 2008, Kent Jordan, M.D., completed a "Complete Psychiatric

5   Evaluation" of Plaintiff, in which Dr. Jordan reported the results of his assessment

6   of Plaintiff's mental impairments.  (Id. at 314-20.)  Dr. Jordan found that

7   Plaintiff's "probable work functioning" would be "adequate at most but not in all

8   areas." (Id. at 319.)  Specifically, Dr. Jordan found that Plaintiff could perform

9   detailed and complex tasks on a sustained basis and could maintain regular

10   attendance. (Id.)  He noted that Plaintiff might have problems accepting

11   instructions from supervisors. (Id.)  Dr. Jordan also stated the following:

12           Due to [Plaintiff's] labile irritability . . . she would have some

13       problems interacting with coworkers and the public as she had some

14       mild problems interacting with the examiner during the emotionally

15       neutral aspects of this evaluation.  Finally, she might also have some

16       mild problems dealing with the usual stressors of competitive

17       employment.  As she had some mild problems dealing in the emotionally

18       neutral stressors of this evaluation, although the claimant's reported

19       psychological day to day functioning appeared adequate.

20   (Id.)

21          In his decision, the ALJ included the following discussion of Dr. Jordan's

22   opinion:

23       The claimant has a history of anxiety and depression.  Treatment records

24       from Kent Jordan M.D., reported during the evaluation, there [sic] was

25       no evidence of any significant anxiety or depression.  However, the

26       claimant did show some anger when she was asked about her current

27       work history.  Dr. Jordan said the claimant's symptoms did not prevent

28       her from performing detailed and complex tasks on a sustained basis.

1      The claimant's cognition was intact and she could maintain regular

2      attendance and perform work consistently.  Dr Jordan said if the

3      claimant remained clean and sober, the claimant would be able to

4      perform detailed and complex tasks on a sustained basis without special

5      supervision.  Due to her labile irritability, the claimant would have

6      problems accepting instructions from a supervisor.  Dr. Jordan gave the

7      claimant a global assessment of functioning score of 65, which are mild

8      symptoms.

9  (Id. at 12 (citation omitted).)

10      Plaintiff contends that the ALJ did not properly consider Dr. Jordan's

11 opinion that Plaintiff "would have" problems accepting instructions from her

12 supervisors and interacting with co-workers and the public, and "would have"

13 mild problems dealing with the usual stressors of competitive employment.

14 Plaintiff also contends that, to the extent the ALJ implicitly rejected Dr. Jordan's

15 opinion, he failed to provide specific and legitimate reasons, supported by

16 substantial evidence, to do so.  (JS at 4, 9.)  Relatedly, Plaintiff contends that the

17 ALJ failed to include limitations based on Dr. Jordan's opinion in his RFC

18 assessment for Plaintiff.  (Id. at 10-11, 13-14.)

19      **1.**     **Dr. Jordan's Opinion.**

20      It is well-established in the Ninth Circuit that a treating physician's opinions

21 are entitled to special weight, because a treating physician is employed to cure and

22 has a greater opportunity to know and observe the patient as an individual.

23 McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).  "The treating

24 physician's opinion is not, however, necessarily conclusive as to either a physical

25 condition or the ultimate issue of disability."  Magallanes v. Bowen, 881 F.2d 747,

26 751 (9th Cir. 1989).  The weight given a treating physician's opinion depends on

27 whether it is supported by sufficient medical data and is consistent with other

28 evidence in the record.  See 20 C.F.R. § 404.1527(d)(2).  If the treating

1  physician's opinion is uncontroverted by another doctor, it may be rejected only

2  for "clear and convincing" reasons.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

3  1995); Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991).  If the treating

4  physician's opinion is controverted, it may be rejected only if the ALJ makes

5  findings setting forth specific and legitimate reasons that are based on the

6  substantial evidence of record.  Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir.

7  2002); Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th

8  Cir. 1987).  As with a treating physician, the controverted findings of an

9  examining physician may only be rejected by the ALJ for specific and legitimate

10  reasons supported by substantial evidence in the record.  Lester, 81 F.3d at 830-31

11  (citing Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)).

12       Preliminarily, Plaintiff overstates Dr. Jordan's opinion.  Dr. Jordan did not

13  unequivocally state that Plaintiff *would have* problems accepting instructions from

14  supervisors, or *would have* mild problems dealing with the usual stressors of

15  competitive employment.  Rather, Dr. Jordan said that Plaintiff *might have* mild

16  problems, and his speculation was based on Plaintiff's current condition, which he

17  expected to improve as Plaintiff maintained sobriety, which she was motivated to

18  do.  (AR at 319-20.)  Thus, the ALJ need not include these statements in his

19  summary of medical findings as they do not qualify as "significant probative

20  evidence" that the ALJ would be required to discuss.  Vincent v. Heckler, 739

21  F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (ALJ need not discuss all

22  evidence presented, but must explain why significant probative evidence has been

23  rejected).

24       Moreover, the ALJ's decision reflects that he properly considered Dr.

25  Jordan's opinion.  At step two of the sequential evaluation process, the ALJ

26  discussed Dr. Jordan's opinion at length in determining that Plaintiff's mood

27  disorder was not severe.  Although the ALJ did not specifically rely on Dr.

28  Jordan's opinion to make his non-severity finding, he did not discuss any other

6

1 | opinions at step two.  (AR at 12.)

2 |      Indeed, the ALJ's decision did not contradict Dr. Jordan's opinion.  In

3 | finding Plaintiff's mood disorder not severe, the ALJ noted that Dr. Jordan

4 | assessed Plaintiff's Global Assessment of Functioning ("GAF") at 65.  (Id. at 12,

5 | 319.)  A GAF score between 61 and 70 is indicative of "Some mild symptoms . . .

6 | OR some difficulty in social, occupational, or school functioning . . . but generally

7 | functioning pretty well[.]" Diagnostic and Statistical Manual of Mental

8 | Disorders-IV-TR 34 (American Psychiatric Ass'n ed., 4th ed. 2000).  With respect

9 | to Plaintiff's ability to work, Dr. Jordan opined that "Plaintiff's probable work

10 | functioning would be adequate at most but not in all areas."  (AR at 319.)  Dr.

11 | Jordan did not state that Plaintiff could not perform work-related tasks or function

12 | in a work environment.  Indeed, Dr. Jordan opined that Plaintiff could perform

13 | detailed and complex tasks on a sustained basis and maintain regular attendance

14 | and perform work consistently.  (Id.)  According to Dr. Jordan, Plaintiff's

15 | problems related to her "labile irritability," if any, would be mild.  (Id.)  The ALJ's

16 | limitations to work that require Plaintiff not to be responsible for the safety of

17 | others, and to simple, repetitive, non-public tasks were even more restrictive than

18 | the limitations imposed by Dr. Jordan.  (Id. at 13.)

19 |      Based on the foregoing, the Court finds no error in the ALJ's consideration

20 | of Dr. Jordan's opinion.

21 |      **2.**    **RFC.**

22 |      Plaintiff contends that the ALJ's RFC assessment failed to include

23 | limitations based on Dr. Jordan's opinion.  (JS at 10-11, 13-14.)  For the same

24 | reasons discussed in Part III.B.1 above, this claim also fails.

25 | **C.**    **The ALJ's Hypothetical Question to the Vocational Expert.**

26 |      Plaintiff contends that the ALJ failed to incorporate the previously-

27 | discussed limitations suggested by Dr. Jordan into the hypothetical question he

28 | posed to the VE.  (JS at 14-17.)

1    "In order for the testimony of a VE to be considered reliable, the

2   hypothetical posed must include 'all of the claimant's functional limitations, both

3   physical and mental' supported by the record." Thomas, 278 F.3d at 956 (quoting

4   Flores v. Shalala, 49 F.3d 562, 570-71 (9th Cir. 1995)).  Hypothetical questions

5   posed to a VE need not include all alleged limitations, but rather only those

6   limitations which the ALJ finds to exist.  See, e.g., Magallanes, 881 F.2d at

7   756-57; Copeland v. Bowen, 861 F.2d 536, 540 (9th Cir. 1988); Martinez v.

8   Heckler, 807 F.2d 771, 773-74 (9th Cir. 1986).  Thus, an ALJ must propose a

9   hypothetical that is based on medical assumptions, supported by substantial

10   evidence in the record, that reflects the claimant's limitations.  Osenbrock v.

11   Apfel, 240 F.3d 1157, 1163-64 (9th Cir. 2001) (citing Roberts v. Shalala, 66 F.3d

12   179, 184 (9th Cir. 1995)); see also Andrews, 53 F.3d at 1043 (although the

13   hypothetical may be based on evidence which is disputed, the assumptions in the

14   hypothetical must be supported by the record).

15    As discussed above, the ALJ properly determined Plaintiff's RFC.  The

16   hypothetical to the VE included those restrictions the ALJ properly found to exist.

17   (AR at 39.)  Additionally, the VE independently noted that the Plaintiff could not

18   perform her prior jobs as a receptionist (DOT 237.367-038), secretary (DOT

19   201.362-030), insurance clerk (DOT 214.362-022), and office helper (DOT

20   239.567-010) because those jobs required public contact.  (Id. at 39.)  Thus, he

21   implicitly took into account Dr. Jordan's opinion regarding Plaintiff's problems

22   interacting with co-workers and the public.

23    Based on the foregoing, the Court finds there was no error in the ALJ's

24   hypothetical question to the VE, which did not include the limitations suggested

25   by Dr. Jordan's opinion.  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001)

26   ("Because the ALJ included all of the limitations that he found to exist, and

27   because his findings were supported by substantial evidence, the ALJ did not err

28   in omitting the other limitations that Rollins had claimed, but had failed to

8

1 | prove.").

2 | **D.      The ALJ's Reliance on the Vocational Expert's Testimony.**

3 | Plaintiff contends that the ALJ's RFC limitations are inconsistent with the

4 | jobs suggested by the VE.  (JS at 17-25, 28-29.)  As a result, Plaintiff contends,

5 | the ALJ did not satisfy his burden of proving there is other work in the economy

6 | that Plaintiff can perform.  Specifically, Plaintiff contends that:  (1) the cleaner job

7 | would require Plaintiff to stoop frequently, work with moving machinery, operate

8 | vehicles, be responsible for the safety of others, and perform public tasks, which is

9 | inconsistent with the ALJ's limitations to occasional stooping, no moving

10 | machinery, avoid operating vehicles, no responsibility for the safety of others, and

11 | non-public tasks (id. at 20); (2) the fast-foods worker job would require Plaintiff to

12 | perform public tasks, which is inconsistent with the ALJ's limitation to non-public

13 | tasks (id. at 22); and (3) the hand packager job would require Plaintiff to work

14 | with moving machinery and be responsible with for the safety of others, which is

15 | inconsistent with the ALJ's limitations to no moving machinery and no

16 | responsibility for the safety of others (id. at 23).

17 | Once a claimant has met his burden at step four of demonstrating that he

18 | cannot perform his past relevant work, the burden shifts to the Commissioner at

19 | step five to establish that the claimant is capable of performing other jobs in the

20 | economy.  20 C.F.R. §§ 404.1520(f)(g), 404.1560(c); see Johnson v. Shalala, 60

21 | F.3d 1428, 1432 (9th Cir. 1995).  This burden can be met through the use of a VE.

22 | See 20 C.F.R. § 404.1566(e); see also Tackett v. Apfel, 180 F.3d 1094, 1101 (9th

23 | Cir. 1999).  It can also be satisfied by taking notice of reliable job information

24 | contained in various publications, including the DOT.  20 C.F.R. § 404.1566(d).

25 | The DOT is a presumptively authoritative source on the characteristics of jobs.

26 | See Pinto v. Massanari, 249 F.3d 840, 845-46 (9th Cir. 2001).  Nevertheless, the

27 | DOT is not the sole source for this information and the Commissioner may rely on

28 | the testimony of a VE for information about jobs.  Johnson, 60 F.3d at 1435.

1  Where the VE's testimony differs from the DOT, however, he or she must provide

2  a persuasive rationale supported by the evidence to justify the departure.  See

3  Light v. Soc. Sec. Admin., 119 F.3d 789, 793 (9th Cir. 1997).

4       Here, Defendant concedes that the VE's testimony was inconsistent with the

5  DOT and incorrect with respect to Plaintiff's ability to perform the cleaner and

6  fast-foods worker jobs.  (JS at 27.)  Under the DOT, the cleaner job involves

7  frequent stooping.  DOT 381.687-018.  Additionally, the cleaner position may

8  involve the use of an industrial truck and/or pumps.  Id.  The ALJ found, based on

9  the VE's testimony, that Plaintiff could perform the cleaner job, despite his finding

10 that Plaintiff is limited to occasional stooping and no work involving operating

11 vehicles or moving machinery.  (AR at 13.)  Similarly, under the DOT, the fast-

12 foods worker job appears to require some public contact.  For example, the fast-

13 foods worker job would require claimant to "request[] customer order . . . serve[]

14 hot beverages . . . receive[] payment . . . [and/or] serve customers."  DOT 311.472-

15 010.  The ALJ found, based on the VE's testimony, that Plaintiff could perform

16 the fast-foods worker job, despite his finding that Plaintiff is limited to non-public

17 tasks.  (AR at 13.)  The ALJ has an affirmative responsibility to ask whether a

18 conflict exists between a VE's testimony and DOT, and if so, to obtain a

19 reasonable explanation for the conflict.  SSR 00-4p; Massachi v. Astrue, 486 F.3d

20 1149, 1153 (9th Cir. 2007).  The VE in his testimony did not address these

21 apparent inconsistencies, nor did the ALJ in his decision.  (Id. at 13, 39-41.)  (AR

22 at 41.)  Accordingly, the ALJ's reliance on the VE's testimony to find that Plaintiff

23 could perform the cleaner and fast-foods worker jobs was error.  However, the

24 ALJ's finding amounts to harmless error.  Stout v. Comm'r of Soc. Sec., 454 F.3d

25 1050, 1055 (9th Cir. 2006) (an ALJ's error is harmless where such error is

26 inconsequential to the ultimate non-disability determination); Curry v. Sullivan,

27 925 F.2d 1127, 1131 (9th Cir. 1991) (harmless error rule applies to review of

28 administrative decisions regarding disability).  As discussed below, the ALJ

1  properly relied on the VE's testimony to find that Plaintiff could perform the hand
2  packager job.
3        With respect to Plaintiff's contention that the ALJ erroneously relied on the
4  VE's testimony to determine that she could perform the hand packager job, her
5  contention is without merit.  First, Plaintiff contends that she cannot perform the
6  hand packager job because the job requires her to work with moving machinery.
7  As an example of such moving machinery, Plaintiff states:

8        [T]he hand packer [sic] job would require [P]laintiff to work
9        around moving machinery such as a starting [sic], stopping and
10       regulating the speed of a conveyor.  A person using a conveyor could
11       get their hand or fingers caught in the machine potentially causing injury
12       or the loss of this limb.  Further, a conveyor could easily get clothing
13       caught into the belt causing the injury to other body parts or result in
14       death.

15 (JS at 23-24.)  However, Plaintiff's speculation as to potential injury to herself
16 from the use of a conveyor does not constitute evidence of an inconsistency
17 between the VE's testimony and the DOT.  Rather, with respect to "moving
18 mechanical parts," the hand packager job description states, "Not Present-Activity
19 or condition does not exist."  DOT 920.587-018.  Further, although the job
20 description states that a hand packager performs "any combination" of the tasks
21 listed in the DOT, it does not state that a worker is required to perform all of them.
22 Id.

23       Plaintiff also contends that she cannot perform the hand packager job
24 because the job requires her to be responsible for the safety of others.  (JS at 23-
25 24.)  However, Plaintiff again does not provide any evidence to support her
26 contention.  Plaintiff merely speculates regarding both her responsibility for the
27 use of a conveyor as part of the hand packager job and potential injury to her
28 putative co-workers due to her use of the conveyor.  (Id.)  In contrast, the job

1    description makes no mention of safety requirements or obligations to co-workers.

2    DOT 920.587-018.

3         Morever, as discussed above, the ALJ posed a hypothetical question to the

4    VE that included all of Plaintiff's limitations noted in the ALJ's RFC finding,

5    including his limitations on stooping, public contact, working around moving

6    machinery, and responsibility for the safety of others.  (AR at 39.)  In response, the

7    VE testified that Plaintiff, with the stated limitations, could still perform the

8    cleaner, fast-foods worker, and hand packager jobs.  (Id. at 40.)  As the Court has

9    found, the VE's testimony, at least with respect to the hand packager job,

10   constitutes substantial evidence supporting the ALJ's determination that Plaintiff

11   could perform that job.  Tackett, 180 F.3d at 1101.

12        Based on the foregoing, the Court finds that the VE's testimony that

13   Plaintiff could perform the hand packager job did not conflict with the DOT, and,

14   therefore, the ALJ did not err in relying on that testimony.  Thus, the ALJ's

15   erroneous reliance on the VE's testimony that Plaintiff could perform the cleaner

16   and fast-food worker jobs, which conflicted with the DOT, was harmless.

17                                        **IV.**

18                                       **ORDER**

19        Based on the foregoing, IT THEREFORE IS ORDERED that Judgment be

20   entered affirming the decision of the Commissioner, and dismissing this action

21   with prejudice.

22

23   Dated: September 28, 2011

                              HONORABLE OSWALD PARADA
24                            United States Magistrate Judge

25

26

27

28

                                          12